FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 10, 2018

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA H., | No. 2:17-cv-00295-MKD |
|           Plaintiff, | |
| | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
|    vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
|           Defendant. | ECF Nos. 21, 22 |

      BEFORE THE COURT are the parties' cross-motions for Summary Judgment. ECF Nos. 21, 22. The parties consented to proceed before a magistrate judge. ECF No. 8. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's Motion, ECF No. 21, and grants Defendant's Motion, ECF No. 22.

ORDER - 1

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity.  20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two.  At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the

claimant suffers from "any impairment or combination of impairments which

significantly limits [his or her] physical or mental ability to do basic work

activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c);

416.920(c).  If the claimant's impairment does not satisfy this severity threshold,

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R.

§§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity.  20 C.F.R. §§

404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more

severe than one of the enumerated impairments, the Commissioner must find the

claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

"A finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Parra v. Astrue*, 481 F. 3d 742, 746 (9th Cir. 2007) (citing *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001)). When there is medical evidence of drug or alcohol addiction (DAA), the ALJ must determine whether the drug or alcohol addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§

404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to disability. *Id.* Plaintiff has the burden of showing that drug and alcohol addiction is not a contributing factor material to disability. *Parra*, 481 F.3d at 748.

## ALJ'S FINDINGS

On July 29, 2013, Plaintiff protectively filed applications for Title II disability insurance benefits and Title XVI supplemental security income benefits, alleging an amended onset date of June 1, 2013. Tr. 77, 253-65. The applications were denied initially, Tr. 179-82, and on reconsideration, Tr. 187-90. Plaintiff appeared at hearings before an administrative law judge (ALJ) on November 23, 2015, Tr. 53-70, and on March 21, 2016, Tr. 71-116. On May 3, 2016, the ALJ denied Plaintiff's claim.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2013. Tr. 23. At step two, the ALJ found Plaintiff has the following severe impairments: schizoaffective disorder, psychosis NOS, post-traumatic stress disorder, depressive disorder, borderline personality disorder, polysubstance abuse/dependence, obesity, cervical

ORDER - 7

and lumbar degenerative disc disease, and degenerative joint disease – right knee. *Id.* At step three, the ALJ found Plaintiff's impairments, including the substance use disorders, meet sections 12.03, 12.04, 12.06, 12.08, and 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 24. However, the ALJ found that if Plaintiff stopped the substance use, she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 28. The ALJ then concluded that if Plaintiff stopped the substance use, Plaintiff would have the RFC to perform light work with the following limitations:

> [S]he could sit up to six hours in an eight-hour day; she could stand and/or walk up [to] one hour at a time and six hours total in an eight-hour day; she could occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs, but she could never climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to extreme cold; she would be limited to simple, repetitive tasks of up to three steps; she would be limited to ordinary production requirements; she could tolerate brief, superficial contact with the public and occasional non-collaborative contact with coworkers.

Tr. 31-32.

At step four, the ALJ found that if Plaintiff stopped the substance use, Plaintiff would be able to perform past relevant work as a housekeeper. Tr. 40. Alternatively, at step five, the ALJ found that if Plaintiff stopped the substance use, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as photocopy machine operator and mail clerk. Tr. 41. The ALJ concluded that because substance use disorder is a contributing factor

ORDER - 8

material to the determination of disability, Plaintiff was not under a disability, as defined in the Social Security Act, from June 1, 2013, through May 3, 2016, the date of the ALJ's decision.  Tr. 42.

On June 28, 2017, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1. Whether the ALJ properly determined that substance use disorder is a contributing factor material to the determination of disability;

2. Whether the ALJ properly evaluated the medical opinion evidence; and

3. Whether the ALJ properly evaluated the lay testimony.

ECF No. 21 at 2, 17.

## DISCUSSION

### A. Substantial Evidence of DAA

Plaintiff challenges the ALJ's finding that Plaintiff's substance abuse contributed materially to her limitations.  ECF No. 21 at 5-12.  Plaintiff alleged

that she ceased substance abuse in June 2013, her amended alleged disability onset

date, but that her mental symptoms remained disabling.  ECF No. 21 at 10.

Therefore, Plaintiff contends the ALJ erred by finding that, when she was not using

substances, she retained the RFC to perform a light range of work with additional

limitations.

As an initial matter, Plaintiff faults the ALJ for concluding that Plaintiff

abused drugs or alcohol during the relevant period.  ECF No. 21 at 9-12.  Social

Security claimants may not receive benefits where DAA is a material contributing

factor to disability.  *See* 20 C.F.R. §§ 404.1535(b), 416.935(b); 42 U.S.C. §

423(d)(2)(c).  DAA is a materially contributing factor if the claimant would not

meet the SSA's definition of disability if the claimant were not using drugs or

alcohol.  20 C.F.R. §§ 404.1535(b), 416.935(b).  Plaintiff has the burden of

showing that drug and alcohol addiction is not a contributing factor material to

disability.  *Parra*, 481 F.3d at 748.  Here, the ALJ found that despite Plaintiff's

allegation that she remained sober after June 1, 2013, the record showed she did

not remain abstinent during the relevant period in this case.  Tr. 23.  The ALJ

relied on this evidence of Plaintiff's substance abuse in evaluating Plaintiff's

subjective symptom complaints, the medical opinion evidence, and the lay opinion

evidence.  Tr. 23-24, 34-36.  Additionally, several medical sources opined that

ORDER - 10

Plaintiff's substance abuse contributed to Plaintiff's impairments. *See* Tr. 78-80, 554, 653.

Plaintiff asserts there is no evidence in the record to show that Plaintiff abused substances during the relevant period in this case. ECF No. 21 at 9. However, the record as a whole provides substantial evidence to support the ALJ's finding. During a July 10, 2013, medical appointment, Plaintiff reported that her last use of controlled substances was approximately one week prior. Tr. 492. On August 16, 2013, Plaintiff reported she had been clean for six days. Tr. 526. On April 29, 2014, Dr. Islam-Zwart opined that Plaintiff's psychotic symptoms were likely a result of Plaintiff's methamphetamine addiction. Tr. 653. On August 8, 2014, Plaintiff reported that she had been sober for 14 months, which the provider noted was inconsistent with treatment notes showing ongoing abuse of pain and anxiety medications, including consuming one month's worth of Hydroxizine in three days. Tr. 861. Plaintiff also reported that she had been abusing her pain and anxiety medications for several months prior to her August 2014 involuntary psychiatric hospitalization. *Id.* During a November 19, 2014, assessment at Eastern State Hospital, Plaintiff indicated current substance abuse and stated that her drug usage had been consistent over the years with no extended periods of being clean and sober. Tr. 663. Plaintiff was discharged from Eastern State Hospital to a detoxification program. Tr. 655. On January 28, 2015, Dr. Mulvihill

noted that Plaintiff's discharge paperwork from Eastern State Hospital indicated that Plaintiff had used methamphetamine "for an unknown period of time prior to the detention." Tr. 909. During the same visit, Plaintiff reported to Dr. Mulvihill that she was a "garbage can user," meaning she would use any substance available to her. *Id.* Dr. Mulvihill suspected Plaintiff was intoxicated during an examination on the same day and suggested Plaintiff attend 90 days of court ordered inpatient treatment. Tr. 913. Based on this record, the ALJ reasonably concluded that Plaintiff "did not maintain abstinence from substances for the entire period relevant to this decision." Tr. 23.

Plaintiff argues that other evidence in the record undermines the ALJ's conclusion. ECF No. 21 at 10-12. However, even where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). The Court will only disturb the ALJ's findings if they are not supported by substantial evidence. *Hill*, 698 F.3d at 1158. Here, the record contains substantial evidence to indicate Plaintiff's substance abuse was ongoing during the relevant period in this case, so the Court defers to the ALJ's interpretation of the record.

Plaintiff argues the ALJ's conclusion is not supported because Plaintiff testified that she had been sober since June 1, 2013. ECF No. 21 at 9; *see* Tr. 98. However, the ALJ discredited Plaintiff's subjective reporting because the

"objective medical evidence [did] not fully support the level of limitation claimed." Tr. 33. Plaintiff fails to challenge the ALJ's evaluation of Plaintiff's subjective reporting, ECF No. 21 at 4-18, thus any challenge is waived. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (determining Court may decline to address on the merits issues not argued with specificity); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Plaintiff's discredited subjective reporting does not undermine the substantial medical evidence supporting the ALJ's conclusion.

Finally, Plaintiff argues that the ALJ erred in rejecting the lay testimony of Plaintiff's sponsor, Lea Anne Potter. ECF No. 21 at 9. Ms. Potter declared on February 29, 2016, that Plaintiff had been sober for two and a half years. Tr. 356. However, the ALJ gave this opinion no weight, in part because it was inconsistent with the objective evidence. Tr. 40. As discussed *infra*, the ALJ provided several germane reasons to discredit Ms. Potter's opinion. Accordingly, Ms. Potter's discredited report does not undermine the substantial medical evidence supporting the ALJ's conclusion.

Overall, the ALJ reasonably concluded that Plaintiff "did not remain abstinent during the entire period relevant to this decision." Tr. 23. This finding is supported by substantial evidence.

**B. Medical Opinion Evidence**

Plaintiff challenges the ALJ's consideration of the medical opinions of William Phillips, M.D.; Kayleen Islam-Zwart, Ph.D.; Debra Brown, Ph.D.; Dana Harmon, Ph.D.; Nancy Winfrey, Ph.D. ECF No. 21 at 12-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830-831 (9th Cir. 1995)).

### 1. Dr. Phillips

Dr. Phillips, Plaintiff's treating physician, opined on October 19, 2015, that Plaintiff had marked limitations in her ability to remember locations and work-like procedures; her ability to understand and remember very short and simple instructions; her ability to understand and remember detailed instructions; her ability to carry out very short and simple instructions; her ability to carry out detailed instructions; her ability to maintain attention and concentration for extended periods; her ability to interact appropriately with the general public; her ability to ask simple questions or request assistance; her ability to accept instructions and respond appropriately to criticism from supervisors; her ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; her ability to respond appropriately to changes in the work setting; and her ability to be aware of normal

hazards and to take appropriate precautions; and severe limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; her ability to sustain an ordinary routine without special supervision; her ability to work in coordination with or proximity to others without being distracted by them; her ability to make simple work related decisions; her ability to travel in unfamiliar places or use public transportation; and her ability to set realistic goals or make plans independently of others. Tr. 938-40. The ALJ gave this opinion no weight. Tr. 36. Because Dr. Phillips' opinion was contradicted by Dr. Fligstein, Tr. 127-28, Dr. Robinson, Tr. 157-59, and Dr. Winfrey, Tr. 90-92, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found Dr. Phillips' opinion was not supported by the medical evidence. Tr. 36. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Here, the ALJ observed that Dr. Phillips' opined marked and severe limitations were inconsistent with the

medical evidence, including Dr. Phillips' own treatment notes, which generally showed stability with medication. Tr. 35-36; *see* Tr. 670 (Plaintiff reported on January 9, 2014 that she was stable on her current medication); Tr. 685 (Plaintiff reported on March 21, 2014 that she was feeling better with medication); Tr. 708 (Plaintiff reported on June 18, 2014 that she was happy with her current medication regimen); Tr. 708 (Plaintiff reported on July 30, 2014 that she experienced improvement in her paranoid ideation); Tr. 795 (Plaintiff observed on August 18, 2014 to be pleasant, cooperative, and social when compliant with medication regime); Tr. 714 (Plaintiff reported on August 29, 2014 that she was feeling much better after her involuntary stabilization treatment and that her psychotropic medications were working well for her); Tr. 788 (Plaintiff reported on October 3, 2014 that she auditory hallucinations improved with medication); Tr. 751 (Plaintiff reported on March 24, 2015 that her mental health symptoms were stable); Tr. 897 (Plaintiff observed on May 21, 2015 to be much calmer than on previous visits and reported that she was doing well); Tr. 766 (Plaintiff reported on July 14, 2015 that her mental health symptoms were stable). Additionally, the ALJ acknowledged that Plaintiff decompensated several times during the relevant period, but that the decompensation occurred at times when Plaintiff reported substance abuse. Tr. 35-36; *see* Tr. 861 (Plaintiff reported abusing pain and anxiety medications for several months prior to her August 2014 involuntary

psychiatric hospitalization); Tr. 663 (Plaintiff reported current drug use upon her November 2014 admission to Eastern State Hospital). The ALJ reasonably concluded, based on this record, that Dr. Phillips' opined limitations were inconsistent with the overall record, which showed stability with medication compliance and did not contain evidence unrelated to substance abuse to support Dr. Phillips' opined limitations. Tr. 36. This was a specific and legitimate reason to discredit Dr. Phillips' opinion.

Second, the ALJ found Dr. Phillips' opinion was not explained. Tr. 36. The Social Security regulations "give more weight to opinions that are explained than to those that are not." *Holohan*, 246 F.3d at 1202. "[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray*, 554 at 1228. Dr. Phillips' opinion contains no explanation for the limitations he opined. Tr. 938-40. In light of the inconsistencies between Dr. Phililps' opinion and the record as whole, discussed *supra*, the fact that Dr. Phillips' opinion was not explained provided specific and legitimate reason for the ALJ to discredit Dr. Phillips' opinion.

Third, the ALJ found Dr. Phillip's opinion was entitled to less weight because it concerned an area outside his area of expertise. Tr. 36. A medical provider's specialization is a relevant consideration in weighing medical opinion

evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Dr. Phillips is Plaintiff's primary care provider and the record does not show that he has specialized expertise in psychiatry. *See* Tr. 667. The ALJ rejected Dr. Phillips' opined limitations in favor of the opinions in favor of Dr. Winfrey, a reviewing psychological expert. Tr. 37; *see* Tr. 941-43. The ALJ reasonably concluded that the medical source with psychological expertise was entitled to more weight than Dr. Phillips in rendering opinions on Plaintiff's mental impairments. Tr. 36. This was a specific and legitimate reason to give less weight to Dr. Phillips' opinion.

### 2. Dr. Islam-Zwart – 2014

Dr. Islam-Zwart examined Plaintiff on April 29, 2014, and opined Plaintiff had moderate impairments in her ability to understand, remember, and persist in tasks by following very short and simple instructions; her ability to learn new tasks; her ability to make simple work-related decisions; her ability to be aware of normal hazards and take appropriate precautions; her ability to ask simple questions or request assistance; and her ability to set realistic goals and plan independently; that Plaintiff had marked impairments in her ability to understand, remember, and persist in tasks by following detailed instructions; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; her ability to adapt to changes in a routine work setting; her ability to complete a normal work day and

work week without interruptions from psychologically based symptoms; that

Plaintiff had severe impairments in her ability to communicate and perform

effectively in a work setting and her ability to maintain appropriate behavior in a

work setting; and that Plaintiff's impairments were not primarily the result of drug

or alcohol use in the last 60 days. Tr. 647. The ALJ gave this opinion little

weight. Tr. 35. Because Dr. Islam-Zwart's opinions were contradicted by Dr.

Fligstein, Tr. 127-28, Dr. Robinson, Tr. 157-59, and Dr. Winfrey, Tr. 84-85, the

ALJ was required to provide specific and legitimate reasons for rejecting the

opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found this opinion was inconsistent with other medical

evidence in the record. Tr. 35. Relevant factors to evaluating any medical opinion

include the amount of relevant evidence that supports the opinion, the quality of

the explanation provided in the opinion, and the consistency of the medical opinion

with the record as a whole. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.

2007); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Here, the ALJ

specifically found that Plaintiff's presentation and test performance during Dr.

Islam-Zwart's 2014 examination were inconsistent with both prior and subsequent

examinations. Tr. 35. For example, Plaintiff recalled zero of three items on the

short-delay memory task, but was able to recall three of three items on the same

test during Dr. Islam-Zwart's 2016 evaluation. *Compare* Tr. 652 *with* Tr. 957.

ORDER - 20

Although Plaintiff self-discontinued the Trails A test with Dr. Islam-Zwart in 2014,

Plaintiff successfully completed the Trail Making Test at other times. Tr. 652-53;

*see* Tr. 556 (Plaintiff's Trail Making Tests fell within normal range in August

2013); Tr. 957 (Plaintiff's Trails A test was within normal limits and Trails B test

fell in the moderately impaired range in March 2016). The ALJ also observed that

Plaintiff reported frequent panic attacks to Dr. Islam-Zwart, but did not report

these symptoms to her treating providers. Tr. 650; *see* Tr. 532-40, 594-611, 665-

738. The ALJ reasonably concluded, based on this record, that Dr. Islam-Zwart's

opinion was inconsistent with other medical evidence in the record. This was a

specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

Second, the ALJ found this opinion was based on Plaintiff's self-reports,

which the ALJ found were not credible. Tr. 35. A physician's opinion may be

rejected if it based on a claimant's subjective complaints which were properly

discounted. *Tonapetyan*, 242 F.3d at 1149; *Morgan v. Comm'r of Soc. Sec Admin.*,

169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

1989). "[W]hen an opinion is not more heavily based on a patient's self-reports

than on clinical observations, [this] is no evidentiary basis for rejecting the

opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Based on the

inconsistencies identified *supra* between Plaintiff's presentation to Dr. Islam-Zwart

in 2014 and the other medical evidence in the record, the ALJ reasonably

concluded that Plaintiff's reporting to Dr. Islam-Zwart in 2014 was not credible. Tr. 35. This was a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

Third, the ALJ found that this opinion was based on test results where Plaintiff did not give a full effort in testing. Tr. 35. Evidence that a claimant exaggerated her symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas,* 278 F.3d at 958. As discussed *supra*, Plaintiff's objective mental testing results during Dr. Islam-Zwart's 2014 examination were inconsistent with her performance on other mental examinations in the record. Dr. Winfrey testified that these results indicated Plaintiff was not giving full effort and was not telling the truth during Dr. Islam-Zwart's examination. Tr. 81. The ALJ reasonably concluded that Dr. Islam-Zwart's opinion was entitled to less weight because it was based on Plaintiff's exaggerated symptoms. Tr. 35. This was a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

Fourth, the ALJ found the opinion was based on DSHS standards rather than Social Security Administration standards. Tr. 35. The regulations provide that the amount of an acceptable source's knowledge of Social Security disability programs and their evidentiary requirements may be considered in evaluating an opinion, regardless of the source of that understanding. 20 C.F.R. §§ 404.1527(c), 416.927(c). Although state agency disability rules may differ from Social Security

Administration rules regarding disability, it is not always apparent that the differences in rules affect a particular physician's report without further analysis by the ALJ. Here, the ALJ failed to identify any relevant and specific definitions used in the evaluations that are different from those relevant to the SSA disability determination. Tr. 35. Accordingly, this was not a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion. However, such error is harmless because the ALJ provided other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Islam-Zwart's opinion. *Molina,* 674 F.3d at 1115.

### 3. Dr. Islam-Zwart – 2016

Dr. Islam-Zwart examined Plaintiff again on March 14, 2016, and opined Plaintiff had moderate impairments in her ability to understand, remember, and persist in tasks by following very short and simple instructions; her ability to learn new tasks; her ability to perform routine tasks without special supervision; her ability to make simple work-related decisions; her ability to be aware of normal hazards and take appropriate precautions; her ability to ask simple questions or request assistance; and her ability to set realistic goals and plan independently; that Plaintiff had marked impairments in her ability to understand, remember, and persist in tasks by following detailed instructions; her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; her ability to adapt to routine changes in a

work setting; her ability to communicate and perform effectively in a work setting; that Plaintiff have severe limitations in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms; that the combined impact of Plaintiff's mental impairments caused marked limitations in her ability to perform basic work activities; and that her impairments were not primarily the result of drug or alcohol use in the last 60 days. Tr. 952. The ALJ gave this opinion little to no weight. Tr. 37. Because Dr. Islam-Zwart's opinions were contradicted by Dr. Fligstein, Tr. 127-28, Dr. Robinson, Tr. 157-59, and Dr. Winfrey, Tr. 84-85, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found this opinion was not supported by the medical evidence. Tr. 37. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. Furthermore, a physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett*, 340 F.3d at 875. Here, the ALJ observed that Dr. Islam-Zwart's examination findings showed mental control within normal limits, Trails A within normal limits, Trails B showing moderate impairment, and no malingering of memory problems. Tr. 957. Dr. Islam-Zwart also observed that Plaintiff's psychotic symptoms and depression were under control with

ORDER - 24

medication.  *Id.*  The ALJ reasonably concluded that these examination results were inconsistent with the moderate, marked, and severe limitations Dr. Islam-Zwart opined.  Tr. 37.  This was a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

Second, the ALJ found this opinion was inconsistent with Plaintiff's record of improvement with medication.  Tr. 37.  An ALJ may discredit physicians' opinions that are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195. The record as a whole shows that Plaintiff's condition showed improvement when she was compliant with medications and not abusing drugs.  *See* Tr. 670 (Plaintiff reported on January 9, 2014 that she was stable on her current medication); Tr. 685 (Plaintiff reported on March 21, 2014 that she was feeling better with medication); Tr. 708 (Plaintiff reported on June 18, 2014 that she was happy with her current medication regimen); Tr. 708 (Plaintiff reported on July 30, 2014 that she experienced improvement in her paranoid ideation); Tr. 795 (Plaintiff observed on August 18, 2014 to be pleasant, cooperative, and social when compliant with medication regime); Tr. 714 (Plaintiff reported on August 29, 2014 that she was feeling much better after her involuntary stabilization treatment and that her psychotropic medications were working well for her); Tr. 788 (Plaintiff reported on October 3, 2014 that she auditory hallucinations improved with medication); Tr. 751 (Plaintiff reported on March 24, 2015 that her mental health symptoms were

stable); Tr. 897 (Plaintiff observed on May 21, 2015 to be much calmer than on previous visits and reported that she was doing well); Tr. 766 (Plaintiff reported on July 14, 2015 that her mental health symptoms were stable); *see also* Tr. 861 (Plaintiff reported abusing pain and anxiety medications for several months prior to her August 2014 involuntary psychiatric hospitalization); Tr. 663 (Plaintiff reported current drug use upon her November 2014 admission to Eastern State Hospital). The ALJ reasonably concluded that Plaintiff's record of improvement when compliant with recommended treatment was inconsistent with the moderate, marked, and severe limitations Dr. Islam-Zwart opined. Tr. 37. This was a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion.

Third, the ALJ found this opinion was entitled to less weight because Dr. Islam-Zwart did not review other evidence in the record. Tr. 37. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Here, the ALJ observed that Dr. Islam-Zwart only reviewed her previous evaluation of Plaintiff. Tr. 37, 950. The ALJ discredited Dr. Islam-Zwart's opinion in favor of Dr. Fligstein and Dr. Robinson, who reviewed the evidence of record as of the time of their review, and Dr. Winfrey, who reviewed the entire record. Tr. 37, 75, 120-22, 148-52. That Dr. Islam-Zwart did not review the longitudinal record provided specific and

ORDER - 26

legitimate reason for the ALJ to discredit her opinion in favor of other medical sources.

Fourth, the ALJ found these opinions were entitled to less weight because they were evaluated under different standards than Social Security regulations. Tr. 37. The regulations provide that the amount of an acceptable source's knowledge of Social Security disability programs and their evidentiary requirements may be considered in evaluating an opinion, regardless of the source of that understanding. 20 C.F.R. §§ 404.1527(c), 416.927(c). As discussed *supra*, although state agency disability rules may differ from Social Security Administration rules regarding disability, it is not always apparent that the differences in rules affect a particular physician's report without further analysis by the ALJ. Here, the ALJ failed to identify any relevant and specific definitions used in the evaluations that are different from those relevant to the SSA disability determination. Tr. 35. Accordingly, this was not a specific and legitimate reason to discredit Dr. Islam-Zwart's opinion. However, such error is harmless because the ALJ provided several other specific and legitimate reasons, supported by substantial evidence, to discredit Dr. Islam-Zwart's opinion. *Molina,* 674 F.3d at 1115.

### 4. Dr. Brown and Dr. Harmon

On August 27, 2013, Dr. Brown examined Plaintiff and opined Plaintiff had moderate impairments in her ability to perform work activities within a schedule,

maintain regular attendance and be punctual within customary tolerances; her ability to learn new tasks; her ability to perform routine tasks without special supervision; her ability to make simple work-related decisions; her ability to ask simple questions or request assistance; that Plaintiff had marked impairments in her ability to be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting; complete a normal workday and work week without interruptions from psychologically based symptoms; her ability to set realistic goals and plan independently; and severe limitations in her ability to adapt to changes in a routine work setting. Tr. 553-54. On September 17, 2013, Dr. Harmon reviewed Dr. Brown's report and opined the same functional limitations. Tr. 547. The ALJ gave these opinions little to no weight. Tr. 34. Because Dr. Brown and Dr. Harmon's opinions were contradicted by Dr. Fligstein, Tr. 127-28, Dr. Robinson, Tr. 157-59, and Dr. Winfrey, Tr. 84-85, the ALJ was required to provide specific and legitimate reasons for rejecting the opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ found these opinions were based on suspect examination results. Tr. 34. A medical opinion may be rejected if it is unsupported by medical findings. *Bray*, 554 F.3d at 1228; *Batson*, 359 F.3d at 1195; *Thomas*, 278 F.3d at 957; *Tonapetyan*, 242 F.3d at 1149; *Matney*, 981 F.2d at 1019. Furthermore,

ORDER - 28

evidence that a claimant exaggerated her symptoms is a clear and convincing reason to reject the doctor's conclusions. *Thomas,* 278 F.3d at 958. Here, the ALJ observed Plaintiff's PAI profile was invalid due to over reporting. Tr. 34, 556. The ALJ also observed that Dr. Brown's testing showed Plaintiff's memory fell between the 0.5 to 4th percentile. Tr. 34, 557. However, during an appointment with her treating only four days prior to this examination, Plaintiff was observed to have normal memory. Tr. 534. Similarly, Plaintiff reported to Dr. Brown that she experienced panic attacks once or twice per week, but had not reported these symptoms to her primary care provider during the same appointment four days prior. *Compare* Tr. 552 *with* Tr. 532-37. The ALJ reasonably concluded that the examination results Dr. Brown and Dr. Harmon based their opinions on were suspect. Tr. 34. This was a specific and legitimate reason to discredit these opinions.

Second, the ALJ found these opinions were based on Plaintiff's functioning while under the effects of substance abuse. Tr. 34. In conducting a DAA analysis, the "key factor" for the ALJ to consider is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). Therefore, the fact that a medical report reflects a claimant's functioning while using drugs or alcohol is a valid consideration to make in evaluating a medical opinion. *See Chavez v. Colvin*, No. 3:14-cv-01178-

JE, 2016 WL 8731796, at *8 (D. Or. July 25, 2016). Here, Dr. Brown opined

Plaintiff's impairments were primarily the result of alcohol or drug use in the last

60 days and observed that Plaintiff's "years of opioid dependence is her primary

problem[] as she recovers… It is likely her IQ and memory scores are lower than

they would be if she was retested after 6-12 months of sobriety." Tr. 554. The

record shows Plaintiff self-reported drug use 20 days before Dr. Brown's

examination. Tr. 526. The ALJ reasonably concluded that the opinions of Dr.

Brown and Dr. Harmon were entitled to less weight because they reflected

Plaintiff's functioning while under the effects of substance abuse. Tr. 34. This

was a specific and legitimate reason to discredit these opinions.

        Third, the ALJ found these opinions were based on DSHS regulations rather

than Social Security Act regulations. Tr. 34. The regulations provide that the

amount of an acceptable source's knowledge of Social Security disability programs

and their evidentiary requirements may be considered in evaluating an opinion,

regardless of the source of that understanding. 20 C.F.R. §§ 404.1527(c),

416.927(c). Although state agency disability rules may differ from Social Security

Administration rules regarding disability, it is not always apparent that the

differences in rules affect a particular physician's report without further analysis by

the ALJ. Here, the ALJ failed to identify any relevant and specific definitions used

in the evaluations that are different from those relevant to the SSA disability

determination. Tr. 35. Accordingly, this was not a specific and legitimate reason to discredit these opinions. However, such error is harmless because the ALJ provided several other specific and legitimate reasons, supported by substantial evidence, to discredit these opinions. *Molina,* 674 F.3d at 1115.

### 5. Dr. Winfrey

Dr. Winfrey reviewed the record as whole and testified at the hearing that when Plaintiff was not abusing drugs or alcohol, Plaintiff's impairments would cause mild limitations in daily activities, moderate impairments in social functioning, moderate impairments in concentration, persistence, and pace, and no episodes of decompensation; that Plaintiff would need a job where she did not rely on other and others did not rely on her; that Plaintiff should avoid crowds; and that Plaintiff should be limited to simpler tasks due to occasional auditory hallucinations. Tr. 77-79, 84-85. The ALJ gave this opinion great weight. Tr. 37. Although an ALJ must provide specific and legitimate reasons to reject contradicted medical opinion evidence, the same standard does not apply when the ALJ credits opinion evidence. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Bayliss*, 427 F.3d at 1216. Furthermore, the opinion of a non-examining expert "may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan*, 242 F.3d at 1149.

Although not required to provide specific and legitimate reasons to credit a medical opinion, here the ALJ listed several reasons for crediting Dr. Winfrey's opinion. First, the ALJ found Dr. Winfrey's opinion was consistent with the longitudinal record. Tr. 37. Relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. An ALJ may choose to give more weight to an opinion that is more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). As discussed *supra*, the record as a whole shows Plaintiff showed improvement in her symptoms when she was compliant with medications and not abusing drugs or alcohol. *See* Tr. 670 (Plaintiff reported on January 9, 2014 that she was stable on her current medication); Tr. 685 (Plaintiff reported on March 21, 2014 that she was feeling better with medication); Tr. 708 (Plaintiff reported on June 18, 2014 that she was happy with her current medication regimen); Tr. 708 (Plaintiff reported on July 30, 2014 that she experienced improvement in her paranoid ideation); Tr. 795 (Plaintiff observed on August 18, 2014 to be pleasant, cooperative, and social when compliant with medication regime); Tr. 714 (Plaintiff reported on August 29, 2014 that she was feeling much better after her involuntary

ORDER - 32

stabilization treatment and that her psychotropic medications were working well for her); Tr. 788 (Plaintiff reported on October 3, 2014 that she auditory hallucinations improved with medication); Tr. 751 (Plaintiff reported on March 24, 2015 that her mental health symptoms were stable); Tr. 897 (Plaintiff observed on May 21, 2015 to be much calmer than on previous visits and reported that she was doing well); Tr. 766 (Plaintiff reported on July 14, 2015 that her mental health symptoms were stable); *see also* Tr. 861 (Plaintiff reported abusing pain and anxiety medications for several months prior to her August 2014 involuntary psychiatric hospitalization); Tr. 663 (Plaintiff reported current drug use upon her November 2014 admission to Eastern State Hospital). The ALJ reasonably concluded that Dr. Winfrey's opinion was consistent with Plaintiff's record of improvement. Tr. 37.

Second, the ALJ found Dr. Winfrey's opinion was entitled to more weight because she reviewed the record as a whole. Tr. 37. The extent to which a medical source is "familiar with the other information in [the claimant's] case record" is relevant in assessing the weight of that source's medical opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6). Dr. Winfrey testified that she reviewed the record as a whole. Tr. 75. The ALJ properly considered Dr. Winfrey's familiarity with the longitudinal record in assigning her opinion great weight.

Third, the ALJ found Dr. Winfrey's opinion was entitled to more weight because of her specialized expertise. Tr. 37. A medical provider's specialization is a relevant consideration in weighing medical opinion evidence. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). Dr. Winfrey is a licensed clinical psychologist. Tr. 75, 941. The ALJ reasonably considered Dr. Winfrey's psychology specialty in evaluating Dr. Winfrey's assessment of Plaintiff's mental impairments.

Fourth, the ALJ found Dr. Winfrey's opinion was entitled to more weight because of her familiarity with Social Security regulations. Tr. 37. The ALJ may consider a medical provider's familiarity with "disability programs and their evidentiary requirements" when evaluating a medical opinion. *Orn*, 495 F.3d at 631. Dr. Winfrey was called as a medical expert for the administrative hearing. Tr. 73. The ALJ reasonably considered Dr. Winfrey's familiarity with Social Security regulations in crediting her opinion.

**C. Lay Testimony**

Plaintiff faults the ALJ for giving no weight to the opinion of Plaintiff's sponsor, Lea Anne Potter. ECF No. 21 at 17. On February 29, 2016, Ms. Potter opined Plaintiff was unable to work. Tr. 356-57. Ms. Potter is not a medical professional and is therefore a lay witness. *Id.* An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness

testimony cannot establish the existence of medically determinable impairments, but lay witness testimony is "competent evidence" as to "how an impairment affects [a claimant's] ability to work." *Id*.; 20 C.F.R. §§ 404.1513, 416.913; *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition."). If lay testimony is rejected, the ALJ "'must give reasons that are germane to each witness.'" *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Dodrill*, 12 F.3d at 919).

First, the ALJ found Ms. Potter's opinion was inconsistent with the objective evidence as a whole. Tr. 40. Inconsistency with the medical evidence is a germane reason for rejecting lay witness testimony. *See Bayliss*, 427 F.3d at 1218; *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001) (germane reasons include inconsistency with medical evidence, activities, and reports). Specifically, Ms. Potter opined that Plaintiff has been sober for the entire time Ms. Potter knew Plaintiff, beginning approximately December 2013. Tr. 356. However, as discussed *supra*, substantial evidence in the record shows Plaintiff was abusing drugs during this time period. *See* Tr. 655, 663, 861, 909, 913. Furthermore, the ALJ observed that Ms. Potter primarily opined on Plaintiff's physical functioning, while the record as a whole indicated that Plaintiff's mental impairments were more limiting than her physical impairments. Tr. 40. The inconsistencies between

Ms. Potter's report and the medical record as a whole were a germane reason for the ALJ to discredit Ms. Potter's opinion.

Second, the ALJ found Ms. Potter's opinion was entitled to less weight because she has no medical training. Tr. 40. "[M]edical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." *Nguyen*, 100 F.3d at 1467. However, lay testimony "as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence." *Id.* (emphasis in original). Here, Ms. Potter opined that Plaintiff's dual diagnoses of bipolar disorder and addiction caused Plaintiff to engage in certain thought processes that contribute to her mental and physical limitations. Tr. 356. The ALJ reasonably concluded that these opinions were outside the scope of Ms. Potter's competency as a lay witness. Tr. 40. This was a germane reason to discredit Ms. Potter's opinion.

Third, the ALJ found Ms. Potter's opinion was rendered on an opinion reserved to the Commissioner. Tr. 40. Opinions on the ultimate issue of disability are an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(c); *see also Wickramasekera v. Astrue*, No. CV 09-449-TUC-HCE, 2010 WL 3883241, at *34 (D. Ariz. Sept. 29, 2010) (applying regulation to lay witness testimony). Ms. Potter opined that Plaintiff is unable to work. Tr. 357. The ALJ reasonably

rejected this conclusion as an issue reserved to the commissioner. Tr. 40. This was a germane reason to discredit this portion of Ms. Potter's opinion.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, this court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 21, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 22, is GRANTED.

3. The Court enter JUDGMENT in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and CLOSE THE FILE.

DATED September 10, 2018.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 37